NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 09-4298
_____

CECIL ROBERTO FIGUEROA-MATOS,
Petitioner

v.

ATTORNEY GENERAL OF THE UNITED STATES OF AMERICA,
Respondent
_____

On Petition For Review of an Order
of the Board of Immigration Appeals
(No. A031-031-083)
Immigration Judge: Honorable Walter A. Durling
_____

Submitted Under Third Circuit LAR 34.1(a)
February 8, 2011
_____

Before: JORDAN, GREENAWAY, JR., and STAPLETON, Circuit Judges

(Opinion Filed: July 27, 2011 )
_____

OPINION

GREENAWAY, JR., Circuit Judge

    Cecil Roberto Figueroa-Matos ("Figueroa-Matos"), a native and citizen of the

Dominican Republic, petitions for review of an order of the Board of Immigration

Appeals ("BIA" or "Board"). We will grant the petition.

1

# I. BACKGROUND

We write primarily for the benefit of the parties and recount only the essential facts.

Figueroa-Matos was born in, and is a citizen of, the Dominican Republic. He immigrated to the United States in 1974, when he was nine years old. Figueroa-Matos's parents, children, and grandson are United States citizens. He has over forty family members who live in the United States.

In 1987, Figueroa-Matos pled guilty to attempted criminal possession of a weapon in the third degree under New York Penal Code §§ 110, 265.02. He was sentenced to five years of probation. In 1989, Figueroa-Matos was convicted of conspiracy to violate federal narcotics law, in violation of 21 U.S.C. § 846; possession with intent to distribute heroin, in violation of 21 U.S.C. §§ 812, 841(a)(1), and 841(b)(1)(A); and possession with intent to distribute cocaine, in violation of 21 U.S.C. §§ 812, 841(a)(1), and 841(b)(1)(B). The charges arose from Figueroa-Matos's agreement, in exchange for $15,000, to let a friend deal drugs at a gas station Figueroa-Matos owned. Figueroa-Matos was sentenced to twenty-four years of imprisonment on each count, to run concurrently; was assessed $20,150 in fines; and was sentenced to ten years of probation upon release.

The government issued a Notice to Appear on January 5, 2001, charging Figueroa-Matos with removability under Immigration and Nationality Act (INA) §§ 237(a)(2)(A)(iii) and 237 (a)(2)(B)(i), due to his 1989 aggravated felony and controlled

substances offenses. Figueroa-Matos sought relief under former INA 212(c) and the IJ heard testimony from Figueroa-Matos and a number of others in his family.

### A. March 30, 2007 IJ Decision

On March 30, 2007, IJ Roxanne C. Hladylowycz issued a decision finding Figueroa-Matos credible and granting him a waiver of deportation. The IJ found that, due to the nature of Figueroa-Matos's crime and his prison sentence, a showing of "unusual or outstanding equities" was required to warrant Figueroa-Matos's waiver. IJ Removal Proceedings Decision at 20 (Mar. 30, 2007) (quoting In re Marin, 16 I& N Dec. 581, 586 (BIA 1978)) (internal quotation marks omitted). The IJ found that Figueroa-Matos met this heightened standard because Figueroa-Matos's convictions were his only adverse consideration and he showed outstanding or unusual equities with his "excellent incarceration record, close family ties, long term residence in the United States, employment record and rehabilitation." Id. Additionally, the IJ considered that Figueroa-Matos committed his crimes at a young age, over twenty years before the decision. The IJ noted that Figueroa-Matos was "genuinely rehabilitated," had expressed sincere remorse for his actions, and counsels youth including his younger relatives. Id. at 21. That Figueroa-Matos had been employed prior to his incarceration and that his brother promised him employment after Figueroa-Matos's release factored into the IJ's decision. The government appealed to the BIA.

**B.    September 13, 2007 BIA Decision**

On September 13, 2007, the BIA issued a decision sustaining the government's appeal and vacating, in part, the IJ's decision. The BIA denied Figueroa-Matos's application for a waiver of deportability under Section 212(c) because the majority found that Figueroa-Matos's drug crime outweighed his positive equities. In making this determination, the BIA majority considered a number of the positive equities upon which the IJ relied, but the majority did not mention Figueroa-Matos's "genuine rehabilitation." Instead, the majority concluded that Figueroa-Matos had "criminal tendencies" and would be a danger to the community. In re Figueroa-Matos, A31 031 083, at 2 (BIA Sept. 13, 2007). The majority did not explicitly state that the IJ's finding of "genuine rehabilitation" was clearly erroneous. Although Board Member Filppu concurred in the decision, he noted that Figueroa-Matos's family ties were an unusual or outstanding equity in his favor. Board Member Cole dissented because she found no error in the IJ's decision and would affirm the grant of 212(c) relief. Figueroa-Matos petitioned this Court for review of the BIA order.

**C.    Figueroa-Matos v. Att'y Gen., 312 F. App'x 480 (3d Cir. 2009).**

On February 23, 2009, we issued an opinion granting Figueroa-Matos's petition and remanding the matter to the BIA. We remanded the matter because, despite the IJ's finding, the BIA decision did not recognize Figueroa-Matos's rehabilitation.

4

### D.  October 14, 2009 BIA Decision

Upon remand, the BIA issued a decision on October 14, 2009, again, denying

Figueroa-Matos's application for Section 212(c) relief.  The BIA noted that it found no

reason to disturb the IJ's finding that Figueroa-Matos was genuinely rehabilitated and

that the Board had "no wish to minimize any of the respondent's very substantial

equities, which a majority of this panel has found to be 'unusual or outstanding.'"  In re

Figueroa-Matos, A31 031 083, at 2 (BIA Oct. 14, 2009).  In its discussion, the BIA noted

that "drug trafficking activity of this kind is such a serious adverse factor that it

outweighs even unusual or outstanding equities, including rehabilitation, except in

relatively rare cases presenting even more powerful positive factors than shown by the

respondent."  Id. (internal citation omitted).  The opinion continued that "the seriousness

of the respondent's drug trafficking activity and the myriad harmful social consequences

flowing from such activity persuade us that a favorable exercise of discretion would not

be in the best interest of the United States in this instance."  Id.  The BIA noted that

Figueroa-Matos's family members would "undoubtedly experience real hardship in

connection with his removal," but did not specifically mention any positive

countervailing equities besides Figueroa-Matos's rehabilitation.  Id.

Figueroa-Matos petitions for our review.

## II. JURISDICTION and STANDARD OF REVIEW

This Court has jurisdiction to review final orders of removal issued by the BIA,

pursuant to 8 U.S.C. § 1252(a).  The government contends, as it did in Figueroa-Matos's

first appeal, that we lack jurisdiction to hear the matter before us. We conclude to the contrary, for the same reason we did in the prior appeal:

> The government contends that petitioner's challenge amounts to a disagreement with the weight the BIA accorded to the favorable and unfavorable factors in petitioner's case. This Court would lack jurisdiction to consider such a challenge. *8 U.S.C. § 1252(a)(2)(B)(ii).* The government, however, mischaracterizes the BIA's decision at least in part. Despite reciting the proper standard for weighing the equities, the BIA misapplied that standard by ignoring the factor that the IJ found most significant – petitioner's genuine rehabilitation. . . . Although the BIA has discretion to accord this factor little weight, the BIA lacks authority to ignore the factor altogether, especially when the IJ relied principally on that factor in deciding to grant relief.

Figueroa-Matos v. Att'y Gen., 312 F. App'x 480, 481 (3d Cir 2009).

As is apparent from the following discussion, Figueroa-Matos's challenge to the BIA's latest opinion is no different in principal from his earlier challenge, and we have jurisdiction to entertain it.

## III. ANALYSIS

A. Legal Standard

In Huang v. Attorney General, 620 F.3d 372 (3d Cir. 2010), we held that

> when the BIA reaches a different conclusion than the IJ, either on the facts or the law, its review must reflect a meaningful consideration of the record as a whole. It is not enough for the BIA to select a few facts and state that, based on them, it disagrees with the IJ's conclusion.

Id. at 387.

The BIA "is not required to write an exegesis on every contention."  Toussaint v. Att'y Gen., 455 F.3d 409, 414 (3d Cir. 2006) (quoting Zubeda v. Ashcroft, 333 F.3d 463, 477 (3d Cir. 2003) (internal quotation mark omitted)); see Huang, 620 F.3d at 388 ("we are not suggesting that the BIA must discuss every piece of evidence mentioned" by an applicant).  However,

> the BIA must describe its reasoning with enough specificity to inform the parties and us why it reached its conclusion. The BIA must show that it reviewed the record and considered the evidence upon which the IJ relied, and it must explain why the record warrants a different conclusion than the one reached by the IJ.

Huang, 620 F.3d at 387.  The BIA "may not ignore evidence favorable to the alien."  Id. at 388.

## B. Discussion

In granting Figueroa-Matos 212(c) relief, the IJ relied on Figueroa-Matos's positive equities, including his incarceration record; close family ties; long term residence in the United States; employment history and prospects; the young age at which he had committed his crimes, over twenty years before the IJ's decision; his expression of sincere remorse for his actions; and his work as a youth counselor and mentor. Interestingly, with the exception of Figueroa-Matos's genuine rehabilitation, the 2007 BIA decision referred to all of the positive equities.  On the other hand, in the 2009 BIA decision, no positive equities were examined except Figueroa-Matos's rehabilitation and the vague mention of his "very substantial equities."  In re Figueroa-Matos, A31 031 083, at 2 (BIA Oct. 14, 2009).

7

The 2009 BIA decision does not comply with <u>Huang</u> because the BIA does not mention in that decision any positive countervailing equities besides Figueroa-Matos's rehabilitation. <u>Huang</u> requires a BIA decision to show that the Board reviewed the record and considered the evidence upon which the IJ relied, without ignoring evidence favorable to Figueroa-Matos. We held that the 2007 decision did not consider Figueroa-Matos's genuine rehabilitation and, now, the 2009 decision does not consider any positive equity besides his rehabilitation and a passing reference to "very substantial equities" with no follow-up discussion. We cannot engage in conjecture regarding what weight the BIA gave or intended to give to the "very substantial equities" as compared to Figueroa-Matos's drug trafficking activity.

While we reiterate that there is no general requirement that all pieces of evidence be specifically referenced in a BIA decision, a decision in this case can satisfy <u>Huang</u> only if it actually addresses the substantial equities that favor Figueroa-Matos. Specifically, there should be an explanation of why the record warrants a different conclusion than the one the IJ reached in light of all of Figueroa-Matos's positive equities. We do not intend to signal any determination of how the equities should be weighed. Rather, especially in this case (in which the IJ ruled in favor of Figueroa-Matos and the BIA's original consideration produced a decision split three ways), more than a passing reference to "substantial equities" is necessary.

## IV. <u>CONCLUSION</u>

For the reasons set forth above, we will grant the petition for review and remand to

the BIA for further proceedings consistent with this opinion.